FILED

2016 May-25  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **Z.C., a minor, by and through his father and next friend, STEVE COLE,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.:  4:15-CV-567-VEH** |
| | ) |
| **PROGRESSIVE SPECIALTY INSURANCE COMPANY,** | ) ) ) |
| **Defendant**. | ) ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Z.C., through his father and next fried, Steve Cole ("Mr. Cole"), initiated this action in the Circuit Court of St. Clair County on December 22, 2014. (Doc. 1 at 1 ¶ 1). The case involves a single-car motor vehicle in which Plaintiff, a minor, was injured as a passenger. (*Id.* at 2 ¶ 2). The sole defendant remaining in the case is Defendant Progressive Specialty Insurance Company ("Progressive"). Plaintiff's claim against Progressive is for underinsured motorist ("UIM") benefits relating to a policy of insurance covering Plaintiff's mother's motor home (the "Policy"). (*Id.* ¶ 4).

Progressive removed Plaintiff's lawsuit to federal court on April 3, 2015, on

the basis of diversity jurisdiction. (Doc. 1 at 3 ¶¶ 10-11). Pending before the court is Progressive's Motion for Summary Judgment (Doc. 13) (the "Motion") filed on October 2, 2015. Plaintiff filed his opposition (Doc. 15) on October 23, 2015, and Progressive, on November 6, 2015, followed with its reply. (Doc. 17).

The parties' dispute is over whether Plaintiff satisfies the "primarily residing" requirement such that he would be eligible to receive UIM benefits as an insured "relative" pursuant to his mother's Policy with Progressive. (Doc. 13 at 2). Progressive maintains that based upon custody documents and the deposition testimony given by Plaintiff, Mr. Cole, and Plaintiff's mother, Plaintiff cannot be an insured under the UIM portion of the Policy because the evidence establishes that his dad, Mr. Cole, rather than his mother, is the parent with whom Plaintiff has primarily lived. (Doc. 13 at 3). Having studied the summary judgment record and fully considered all the arguments, Progressive's Motion is due to be granted and Plaintiff's UIM claim is due to be dismissed with prejudice because the evidence insufficiently shows that Plaintiff has primarily lived with his mother–a straightforward requisite for coverage under the Policy which Plaintiff bears the burden of proving.

## II.    RULE 56 STANDARD

Summary judgment is proper only when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56(a). At the same time, "[s]ummary judgment procedure is properly regarded not as

a disfavored procedural shortcut, but rather as an integral part of the Federal Rules

as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.

Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 1).

All reasonable doubts about the facts and all justifiable inferences are resolved

in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th

Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

"Once the moving party has properly supported its motion for summary

judgment, the burden shifts to the nonmoving party to 'come forward with specific

facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v.*

*U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L.

Ed. 2d 538 (1986)). Under this familiar framework, "the entry of summary judgment

[is mandated]. . . against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.   FACTUAL BACKGROUND[1]

Plaintiff's parents got divorced in 2010. (Doc. 13-4 at 12).[2] The Divorce Agreement reflects that Plaintiff's parents have shared custody of him and his older brother (Doc. 13-4 at 2 ¶ 3.(a); Doc. 13-3 at 11 at 43)[3] and that Mr. Cole will have physical custody of Plaintiff subject to a visitation schedule with his mother. (Doc. 13-4 at 2-3 ¶ 3.(b)). Plaintiff's parents did not follow the default custody schedule set out in the Divorce Agreement with any regularity. (*See* Doc. 13-3 at 6 at 22 ("No. We never had [the Divorce Agreement] altered. We never followed it, but we never altered it.")).

---

[1]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[2]   All page references to Doc. 13-4 correspond with the court's CM/ECF numbering system.

[3]   All initial page references to Doc. 13-3 correspond with the court's CM/ECF numbering system.

The underlying motor vehicle accident injuring Plaintiff happened in April 2014. (Doc. 13-1 at 2 at 6).[4] At the time of the wreck, Plaintiff's mother lived in Moody and Plaintiff's father–Mr. Cole–lived in Leeds. *Id.*

After the divorce, Plaintiff lived primarily with his father during school days, and primarily with his mother when he was not in school. (Doc. 13-2 at 6 at 21).[5] When Plaintiff was asked during his deposition where he had been living when the accident occurred, he answered, "I had been staying at my mom's for about a week." (Doc. 13-1 at 2 at 6).

When Plaintiff's older brother learned to drive about a year or so before the accident, Plaintiff testified that his brother "could come and pick [him] up and we could go to [our] mom's or he could come to [our] dad's when he wanted" (Doc. 13-1 at 18 at 69), but Plaintiff did not ever quantify how this impacted with whom he primarily lived. Plaintiff did answer affirmatively that Mr. Cole was the person who took him to and from school most of the time. (*Id.* at 5 at 18).

Overall, Plaintiff's testimony about which parent he lived with primarily was inconclusive due to his lack of recollection:

---

[4] All initial page references to Doc. 13-1 correspond with the court's CM/ECF numbering system.

[5] All initial page references to Doc. 13-2 correspond with the court's CM/ECF numbering system.

Q.      And during that time period from the time of the divorce up until the time of the accident we are here about, you were staying more with your daddy; correct?

A.      <u>I don't know</u>.

Q.      Why don't you know?

A.      <u>I can't remember</u>.

(Doc. 13-1 at 4-5 at 16-17 (emphasis added)).

Regarding Plaintiff's living arrangements, Mr. Cole testified:

He has three months off for the summer. He gets two weekend days. And then he is at her house sometime during the week. So I would say that when he is not with her, he is with me. <u>Truthfully, the balance would be in favor of him being with me, but I couldn't say by a lot</u>.

(Doc. 13-2 at 6 at 21 (emphasis added)). When Mr. Cole was asked whether these arrangements changed–*i.e.*, "either more with you or more with Catherine [Plaintiff's mother], at any time from 2010 up to the time of the accident?" Mr. Cole answered, "No." *Id.*

Plaintiff's mother was unable to quantify where Plaintiff primarily lived at the time of the accident:

Q.      So am I correct that as far as 365 days in the year, Zach, not only pursuant to the divorce decree but pursuant because he asked it to be this way, was staying with Steve more than you?

A.      I mean, I can't quantitatively tell you that. Yes, that's what he said. But I can't say it's more or less – I mean, there is what, 180 days

6

in the school year. <u>You know, I mean, I can't give you a number. I can't say he was because he would be at my house sometimes a week at a time, you know. So I can't say that he was at my house a certain percentage and Steve's</u>. I'm sorry. To give you a definite answer, I would not be –

        Q.    Are you testifying that he lived with you more than Steve?

        A.    No. I am not saying that either.

(Doc. 13-3 at 6 at 21-22 (emphasis added)).

## IV.   **ANALYSIS**[6]

Under the Policy an "**Insured person**" for the purposes of the UIM benefits means "**you** or a **relative**[.]" (Doc. 13-5 at 5 ¶ 1.a).[7] The Policy defines "**relative**" to mean:

> [A] person primarily residing in the same household as you, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as primarily residing in the same household as **you** if they intend to continue to reside in **your** household.

(Doc. 13-5 at 3 ¶ 7).

In the case of *State Farm Mut. Auto. Ins. Co. v. Harris*, 882 So. 2d 849 (Ala.

---

[6] "'Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state.'" *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004) (citations omitted)). Moreover, the substantive law of the state governs the interpretation of insurance contracts. *Provau v. State Farm Mut. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985). Hence, the insurance contract issues in this case are governed by Alabama law.

[7] All page references to Doc. 13-5 correspond with the court's CM/ECF numbering system.

2003), the Alabama Supreme Court dealt with the identical modifier of "primarily" in deciding whether the plaintiff qualified as a "relative" under his dad's automobile policy so that he could stack UIM coverage. As the *Harris* court explained in reversing the trial court's ruling in favor of the plaintiff:

> In this case, as in *B.D.B.*, we must construe the modifier "primarily" as it applies to the phrase "lives with you [the insured]." We note that *Merriam–Webster's Collegiate Dictionary* (11th ed. 2003) defines the word "primarily" to mean "for the most part" or "chiefly." Although this Court has held that a person may "live" in more than one place for purposes of uninsured-motorist coverage, *see Davis v. State Farm Mutual Automobile Insurance Co., supra*, we fail to see how a person may "primarily" or "for the most part" live in more than one place at one time. <u>Because at the time of the accident Bo Harris lived "for the most part" with his mother, he could not also "live primarily with" his father</u>.
>
> We conclude that the trial court erred in finding that Bo Harris was a "relative," as that term is defined in the State Farm insurance policies. Because Bo Harris did not fall within the definition of the term "relative" or under any other definition of "insured," he was not entitled to stack the uninsured-motorist coverage available in the insurance policies issued to Hugh Harris by State Farm.

*Harris*, 882 So. 2d at 854 (emphasis added).

Several other courts have agreed with the reasoning in *Harris*. *See, e.g., Lewis v. Likens*, No. CIV. A. 3:12-1675, 2013 WL 633208, at *4 (S.D.W. Va. Feb. 20, 2013) ("In line with the cases above [including *Harris*], this Court finds that 'resides primarily' is an unambiguous term, and refers to the chief or main residence of an

individual."); *State Farm Mut. Auto. Ins. Co. v. Fultz*, No. CIV. A. 2:06CV15, 2007 WL 2789461, at *4 (N.D.W. Va. Sept. 24, 2007) ("Courts which have construed language identical to that contained in the Fultz policy have rejected defendant's argument reasoning that there can only be one primary residence." (citing and then discussing *Harris*)); *State Farm Fire & Cas. Co. v. Lange*, 480 F. App'x 309, 313 (5th Cir. 2012) (citing *Harris* and "agree[ing] with district court that the Texas Supreme Court would conclude that the phrase 'primary residence' is unambiguous [in light of] [s]everal state courts hav[ing] found similar phrases to be unambiguous"). Thus adhering to *Harris*, Progressive is correct that under Alabama law Plaintiff can only have one <u>primary</u> residence at any given time.

Further, under Alabama law the insured bears the initial burden of proving that a particular claim or occurrence falls within coverage under the insurance policy. *See, e.g., Colonial Life & Acc. Ins. Co. v. Collins*, 194 So.2d 532, 535 (Ala. 1967) ("The burden was on plaintiff to prove that the insured's death resulted from injuries sustained in such manner as to bring him within the coverage of the policy."). For this particular case, this means that Plaintiff bears the burden of demonstrating that he primarily resided with his mother at the time of the accident. Here the court finds that, in light of the testimony he and his parents provided, Plaintiff has not presented a triable issue as to that fact and, as a result, Progressive's Motion is due to be granted.

A close reading the underlying deposition transcripts reveals that only one of the three witnesses gave an unequivocal opinion about where Plaintiff primarily lived leading up to the accident–Mr. Cole. More specifically, Mr. Cole affirmatively stated, "the balance would be in favor of him being with me" and also answered negatively when counsel for Progressive asked him if his opinion would be different for any time period before the accident. (Doc. 13-2 at 6 at 21).

Neither Plaintiff's testimony nor his mother's contradicts this evidence provided under oath by Mr. Cole. Plaintiff responded that he could not remember with whom he has lived primarily and Plaintiff's mother was unable to pick a parent with whom Plaintiff has primarily resided. While Plaintiff did indicate that he was staying with his mother for about a week immediately proceeding the accident, he did not ever suggest that this was intended to be more permanent arrangement going forward. Additionally, Plaintiff offers no case authority that such a sliver of time, without more, would somehow satisfy the Policy's "primarily residing" requirement just because that week of time spent at his mother's home happened to take place right before the wreck.

When reading the record in a light most favorable to Plaintiff, the best that he has shown is that he resided at both residences equally and neither one primarily. Although the court does not disagree with Plaintiff that Alabama law has, at times,

permitted UIM coverage under a parent's policy for a child who has two documented residences (Doc. 15 at 9), the policy language interpreted in those cases did not include any qualifying language like "primarily" that removed any lack of clarity over the scope of the contract's intended coverage. *See, e.g., Davis v. State Farm Mut. Auto. Ins. Co.*, 583 So. 2d 225, 230 (Ala. 1991) ("Therefore, we hold that the term 'live with,' as used in the policy in question, is an 'ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode.'"); *id.* ("Although we cannot hold the trial court clearly erroneous in finding that Chuck 'lived' at the apartment, there was no evidence from which the trial court could reasonably infer that Chuck did not also 'live with' his father at the time of the accident for purposes of uninsured motorist coverage.").

Here, unlike the contractual language examined in *Davis*, there is no ambiguity in the Policy's grant of UIM coverage and Plaintiff lacks sufficient evidence to show that he qualifies as an insured relative of his mother under the Policy's unambiguous "primarily residing" requirement. Furthermore, a ruling in Plaintiff's favor calls for an impermissible rewriting of the Policy and a reversible overreach under Alabama law. *See, e.g., St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992) ("If there is no ambiguity, courts <u>must</u> enforce insurance contracts as written and cannot defeat express provisions in a policy,

including exclusions from coverage, by making a new contract for the parties." (emphasis added) (citing *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987))); *Turner v. U.S. Fid. & Guar. Co.*, 440 So. 2d 1026, 1028 (Ala. 1983) (same) (citing *Westchester Fire Ins. Co. v. Barnett Millworks, Inc.*, 364 So. 2d 1137 (Ala. 1978)).

The court acknowledges that Plaintiff alternatively argues that even if he does not fit within the first sentence of the Policy's definition for "relative," the second sentence of that section provides him with UIM coverage. More specifically, Plaintiff contends that:

> [t]his portion of the definition [of relative] does not qualify or require that the residence be 'primary' under the plain meaning of that word as Defendant suggests, but rather expands the definition of primary to include those situations, such as here, in which an unmarried dependent child resides at the home of the named insured and intends to continue residing at the home of the named insured, regardless of where he is actually primarily living at the time.

(Doc. 15 at 14-15).

Thus, Plaintiff urges that when he spent time with his father he was temporarily away from his mother's household and UIM coverage is triggered under the second meaning of "relative" in her Policy regardless of whether her home was his primary household. Noticeably absent from Plaintiff's alternative argument is any on-point supportive authority.

12

After reviewing several coverage opinions on policies containing similar language, the court has found that this second sentence is designed to address instances in which a minor is temporarily away from his <u>primary</u> household because he is attending school, a summer camp, or some other transitory place. In any event, Plaintiff's strained construction of this sentence is directly at odds with controlling Alabama law. The Alabama Supreme Court has made it clear under a comparably-worded policy that this second sentence does not provide an independent definition of "relative" for UIM coverage and that it, unambiguously, must be read in conjunction with the first sentence.

In particular, the dependent language applies to clarify that in the context of when the policyholder's home is <u>also</u> the place where a minor primarily lives, UIM coverage for an accident will still be in effect on that child, despite his temporary absence from the <u>primary</u> residence. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1170 (Ala. 2009) ("Such a reading requires Rachel to be, while 'away at school' away from her <u>primary</u> residence, not simply the policyholder's residence, in order to recover UIM benefits under Mr. Brown's policy.") (emphasis added); *id.* ("To read the two-sentence definition of 'relative' disjunctively would, in effect, rewrite State Farm's policy to [inappropriately] expand UIM coverage to unintended beneficiaries."); *id.* ("Rachel cannot 'qualif[y] as [Mr. Brown]'s 'relative' as his

13

'unmarried and unemancipated child away at school' so as to be entitled to UIM benefits under [Mr. Brown]'s State Farm polic[y,]' <u>because she does not live primarily with Mr. Brown, her father</u>, and she is not temporarily away from her primary residence for the purpose of attending school.") (emphasis added). Therefore in light of *Brown*, the court rejects Plaintiff's secondary contention in opposition to the Motion.

## V.   CONCLUSION

Thus, Progressive's Motion is due to granted and, Plaintiff's case is due to be dismissed with prejudice. The court will enter a separate order in conformance with the foregoing summary judgment opinion.

**DONE** and **ORDERED** this 25th day of May, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

14